ALBERT R. A. DRACHENBERG et al., respondents,

*v.*

ADOLPH DRACHENBERG et al., appellants.

[Submitted October 31st, 1947.   Decided January 29th, 1948.]

On appeal from a decree of the Court of Chancery, in which court the following opinion was filed:

"I am advised that an appeal has been taken in the above cause and I therefore state the reasons which moved me to advise the decree from a part of which the appeal was taken.

"Alvine Drachenberg, a widow, died intestate March 5th, 1940, seized of a six-family dwelling, a two-family dwelling and six garages all free of mortgage lien. She left her surviving the complainants, Albert Drachenberg, Martha Davis, Adolph Drachenberg, Gottlieb John Drachenberg and Alvine Drachenberg, her only children and heirs-at-law, all of whom were of full age except Alvine whose age was 16 at her mother's death. Fifteen days after their mother's death the four adult tenants in common entered into a written agreement whereby they agreed that the properties which had descended to them absolutely and in fee should not be sold, mortgaged or otherwise disposed of unless by their unanimous consent, or to the other parties to the agreement and to the minor Alvine; that Adolph should manage the properties, collect the rent therefrom, pay carrying charges and account annually to the other parties, for which services he should be compensated by having the use and occupation, with his brother Gottlieb and his sister Alvine, of an apartment on the first floor of the two-family dwelling until he marries; that should any of the parties to the agreement die, his or her share should be devised to his or her spouse, if living, otherwise to the child or children of such deceased party on whom the agreement should be binding; that Albert and Martha shall devise their present interest and any interest thereafter acquired so that if Albert predeceases his wife she

shall receive a life interest in his share and upon her death Albert's interest should be divided among his surviving brothers and sisters or, if he should leave issue surviving him, his share should be divided equally among them; and so that Martha should devise a life estate in her interest to her husband and upon his death her interest should be divided equally among her children living at her husband's death. The agreement states that Gottlieb is in ill health and Alvine is an infant and that the agreement is made because the parties thereto desire the property shall continue as one parcel until they unanimously agree to sell and that a home therein shall be provided for Gottlieb and Alvine who shall reside with Adolph; that any profit realized from the property shall be equally divided among the five heirs annually and that in the event of loss each should bear an equal share thereof. The stated consideration for the agreement is one dollar and other good and valuable consideration and the mutual agreements therein which are deemed to be for the benefit of all parties to the agreement. The wife of Albert and the husband of Martha joined in the agreement.

"Upon the execution of the agreement, Adolph, Gottlieb and Alvine occupied the apartment specified in the agreement and they still continue to occupy it without paying rent therefor. Adolph at once took over the management of all the properties and collected rent therefrom until he entered into military or naval service December 10th, 1942, whereupon Alvine undertook such management and collection of rent until Adolph returned from his war service on or about April 12th, 1946, and resumed the management of the properties. Alvine claims that Adolph then took from her $1,100, a balance then in her hands as the net rent collected by her from the properties. Adolph denied receiving any money from Alvine. No account was rendered to complainant or his co-tenants at any time by Adolph or Alvine and on July 8th, 1946, complainant filed his bill in this court praying that Adolph and Alvine account to him and his co-tenants for their management of the properties and that they be decreed to pay him and them the moneys found due on such accounting.

"Complainant subsequently amended his bill by adding thereto a second cause of action wherein he alleged that the aforementioned agreement should be declared void and unenforceable as an unreasonable restraint on alienation; that it contains inconsistent, vague and uncertain terms and conditions; that it was breached because no accounting for rent was ever made to complainant and because Alvine not being a party thereto is not bound by the terms thereof equally with her co-tenants, and praying that the properties be partitioned among all the co-tenants or be sold and the proceeds of sale be divided among them. While the proceedings were pending, an order was entered upon the consent of all the parties except Adolph, reserving to Adolph, Gottlieb and Alvine the use and occupancy of the apartment occupied by them and appointing a receiver of the balance of the properties and restraining Adolph from collecting rent therefrom.

"Upon the final hearing of the cause a decree was advised directing Adolph and Alvine to account before a master for the rent collected by them from the premises in question and directing a partition sale of said premises. The notice of appeal filed herein by defendant Martha Davis is from so much of said decree as directs partition and sale.

"After the evidence in the cause had been presented to me by the parties thereto it was my opinion that the agreement on which the appealing defendant relies should not be deemed to bar the complainant from asserting the right to have the property of which he is seized as a tenant in common of an undivided fifth, sold in partition proceedings. My reasons were:

"1. Conditions or limitations in restraint of alienation or affecting the enjoyment of an estate in fee are repugnant to the nature and qualities of such an estate and should be construed strictly; that it is repugnant to the nature of complainant's estate to prohibit his power of alienation for an indefinite period of time which may extend beyond his lifetime. It is also against public policy to have residential property withdrawn from the market in these days when there is a great demand for such property and it is against the interest of complainant as well as his co-tenants to leave the

management of such property in the hands of a stranger for a long period of time when it may fall into disrepair and deteriorate in value because the owners thereof have no present interest in its upkeep since they cannot know when, if ever, they may dispose of their respective interests and realize any value therefrom.

"2. No co-tenant party to the agreement can dispose of his interest in the property to a stranger without the consent of all his co-tenants. Even the consent of Alvine must be obtained although she is not a party to the agreement, because the agreement limits a sale, mortgage or other disposition by a party to the agreement to the other parties thereto and to Alvine. So long as Alvine may continue to occupy a portion of the common property without paying rent therefor she probably will not consent to complainant's sale of his interest except upon terms dictated by her.

"3. The purpose of the agreement was to provide a home in part of the property for Adolph, Gottlieb and Alvine. For Adolph as compensation for managing the property but he is no longer performing that service. For Alvine because she was a minor at the time but is now 23 years of age and employed. For Gottlieb because he was then somewhat of an invalid but the evidence shows he is competent and is employed. He is 32 years of age and considering his normal expectancy of life he may claim a right of use and occupancy for many years yet to come.

"4. The agreement provides that if any of the parties thereto shall die, his or her share shall be devised to his or her spouse if living, otherwise to his children, and it specifically provides how the interests of Albert and Martha shall be devised to their respective spouses and children. But Adolph, Gottlieb and Alvine are unmarried and should they never marry and have children the agreement seems to leave them free to devise their shares as they see fit. In any event the agreement is not binding on Alvine.

"5. Alvine is not a party to the agreement. In her answer to the original and amended bill she insists on the validity of the agreement and asserts that it should be enforced as to the benefits thereby given her but nowhere in her answer does

she agree that the provisions therein contained with reference to her co-tenants shall be binding on her, so that she is absolutely free to deal with her undivided interest by sale, mortgage, partition or will.

"6. Let us see how the agreement may operate if it is continued in effect through the inability of a co-tenant to obtain unanimous consent to disposal of his share in his lifetime, taking up the disposition of the respective shares in accordance with the natural expectancy of life in the order of the ages of the several co-tenants. Martha is the oldest and is therefore assumed to die first. She may devise a life estate in her share to her husband with remainder to her children 'upon whom this agreement shall be binding.' (The effect of the quoted words will be considered hereafter.) She has children who, if the agreement cannot be said to be binding on them, will eventually take with the right to freely dispose of their share by sale or they may seek partition. Albert is the next oldest. He will be required to devise his share by will to his wife for life and upon her death to his surviving brothers and sisters, unless he has issue surviving him in which event his issue shall take equally. The record does not disclose whether he has issue and if he leaves none his brothers, Adolph and Gottlieb and his sister Alvine will eventually take his share. The next oldest co-tenant is Gottlieb. He is unmarried and the agreement does not limit him to what testamentary disposition he shall make of his share if he dies unmarried and without children. If he should die intestate his brother Adolph and his sister Alvine will take with the issue of Martha and Albert. The next oldest co-tenant is Adolph. What has been said with respect to Gottlieb applies to Adolph's share except that his heirs-at-law will be his sister Alvine and the issue of Martha and Albert. It therefore appears that in the natural course of events Alvine, without any consideration moving from her, will be the most favored beneficiary under the agreement and of course she desires its enforcement although she is not bound by its terms.

"7. For seven years the complainant has owned an absolute one-fifth estate in fee in the properties of which his mother

died seized but he has derived no benefit whatever therefrom. If the agreement to which he became a party is enforceable, it runs for an indefinite period of time, probably for complainant's lifetime, and he will continue to derive no benefit from his ownership unless it be from his share of a small surplus of rents over expenses, and the properties may be operated at a loss. The agreement was breached by the failure of Adolph and Alvine to account to complainant for his share of net rents, in which breach the co-tenants Martha and Gottlieb concurred, thus presenting an impelling reason why the agreement should now be regarded as of no binding effect on complainant.

"8. The agreement provides that if any of the parties thereto 'should die, his or her share of said property shall be devised to his or her spouse if then living, otherwise to the child or children of such deceased party *upon whom this agreement shall be binding.'* There being no time limit fixed for the operation of the agreement and unanimous consent being required for the right of any of the tenants in common who are parties to the agreement to dispose of their shares, the agreement if effectual, will be for the lives of the parties thereto and (under the italicized words) perhaps for the lives of the children of those of the parties thereto who die leaving children, thus violating the rule against perpetuities.

"9. Suppose complainant should receive an offer from a stranger for purchase of his interest and he then offers to sell that interest to his co-tenants at the price offered by the stranger and they should refuse to purchase; suppose further that complainant should then sell to the stranger, would his co-tenants be entitled to a remedy against him by way of specific performance of the agreement? I think not, under the decisions of this court on an agreement such as this which is vague, uncertain, indefinite, unfair and against public policy and lacking in mutuality as between the co-tenants, especially Alvine.

"10. The agreement does not by its terms prohibit the right of a co-tenant to have partition between him and his co-tenants. It provides first that the parties to the agreement

shall not sell the properties unless by their unanimous consent, which I construe as intended to apply to a sale to a stranger, and further that the parties shall not sell unless it be to all the other parties to the agreement, including Alvine, which I construe as intended to permit a co-tenant to sell his share to another co-tenant without the consent of the others. The right of partition between co-tenants is an absolute right which should not be denied in the absence of an explicit agreement not to resort to partition and certainly not to a co-tenant who is in constructive possession of his interest and whose co-owners not only refuse to permit to convey to a stranger but also refuse to purchase his interest. By partition sale the estate in common is assumed to realize fair market value and thus determine what sum those co-tenants who did not desire a partition should have offered to pay to a co-tenant who wished to dispose of his interest."

*Mr. Frederick Klaessig (Mr. Lester H. Fox,* of counsel), for the appellants.

*Mr. Thomas H. Ross (Mr. Harry Tartalsky,* of counsel), for the respondents.

PER CURIAM.

The decree appealed from is affirmed, for the reasons stated in the opinion filed in the court below.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, MCLEAN, SCHETTINO, JJ. 12.

*For reversal and to remand*—HEHER, J. 1.